## State of Vermont v. Deborah Ravenna

[557 A.2d 484]

No. 83-176

Present: **Allen, C.J., Peck and Dooley, JJ., and Barney, C.J. (Ret.) and Keyser, J. (Ret.), Specially Assigned**

Opinion Filed March 18, 1988

Motion for Reargument Denied February 1, 1989

*John A. Rocray, Windham County State's Attorney,* and *Cecelia Cunningham* and *Alan C. Abare, Deputy State's Attorneys,* Brattleboro, for Plaintiff-Appellee.

*Peter F. Langrock* and *John L. Kellner* of *Langrock Sperry Parker & Wool,* Middlebury, for Defendant-Appellant.

**Barney, C.J.** (Ret.), Specially Assigned. The defendant was charged with uttering a forged instrument under 13 V.S.A. § 1802. After a jury trial she was convicted of that offense and appealed. The core of her appeal relates to the element of knowledge required to be proved under 13 V.S.A. § 1802:

> A person who utters and publishes as true a forged, altered or counterfeited record, deed, instrument or other writing mentioned in section 1801 of this title, knowing the same to be false, altered, forged or counterfeited, with intent to injure or defraud a person, shall be imprisoned not more than ten years and fined not more than $1,000.00, or both.

The defendant contends that the evidence in this case, whatever else it may have established, never proved that she "uttered and published" the check in question "knowing the same to be false, altered, forged or counterfeited." We agree and reverse on that ground.

The check involved was issued by the State of Vermont payable to the Brattleboro Area Group Home in the amount of $11,548.08 and dated September 14, 1981. Upon failure of the check to arrive, the Group Home requested a stop payment order.

On October 1, 1981, the Vermont National Bank received a call from a person identifying herself as the defendant. The caller stated that she was in possession of a State of Vermont check in the amount of $11,548.08 which she wished to negotiate to pay off a certain ninety-day note of hers then due in the amount of $4,405.44, the balance to be paid over as $1,700.00 in cash and $5,442.64 in a bank check of the Vermont National Bank. On that same day a person identifying herself as the defendant appeared at a drive-up window of the Vermont National Bank, identified herself to the customer service officer and received the money as already described. Also on October 1, 1981, the Vermont National Bank check was presented at another bank, First Vermont Bank, where it was negotiated. The person appearing at both banks saying she was Deborah Ravenna was later identified by personnel from both banks as being the defendant.

The endorsement on the State of Vermont check, besides that of the defendant, was purportedly of Terry Pitzner, executive director of the Brattleboro Area Group Home. He testified at trial that the signature was not his and that he had never endorsed the September 14, 1981 check. The check was returned by the State

of Vermont to the Vermont National Bank because of the forged endorsement. The evidence also showed that the defendant had previously served on the board of directors of the Group Home, knew Terry Pitzner personally and knew the check was missing.

The defendant argues that the proof in this case is as deficient as the proof was in *State* v. *Colby,* 139 Vt. 475, 431 A.2d 462 (1981). That case dealt with the cashing of a welfare check. The defendant, equipped with identification sufficient to pass himself off as a certain third party, a friend of his, cashed the welfare check made out to that party. The endorsement was forged. The evidence did not establish by whom it was forged, or whether or not the defendant knew of the forgery. The defendant introduced no evidence. This Court reversed the conviction on the ground that the State was required by the statute to prove that the defendant knew the endorsement was forged. The opinion points out that the State never even introduced evidence that the defendant knew and could recognize the third party's handwriting, suggesting that with any such evidence supporting an inference of knowledge of forgery, the result might have been different. *Id.* at 479, 431 A.2d at 465; see also *State* v. *Tomlinson,* 457 So. 2d 651, 654 (La. 1984) ("mere possession of a forged writing does not prove beyond a reasonable doubt that the possessor has knowledge of the forgery . . . .").

As in the *Colby* case, the issue here is not whether there was any wrongdoing involved in the defendant's actions, but rather whether the State presented evidence which sufficiently established the particular crime with which it elected to charge the defendant. Also, as in the *Colby* case, the evidence lacks any direct proof that the defendant knew the endorsement was forged, or that she knew that the signature of Terry Pitzner was not authentic. In both cases the evidence used to establish that guilty knowledge on the part of the defendant is equally consistent with attempts to wrongfully acquire the proceeds of a valid instrument which is not the property of the defendant. The additional fact established at trial that the check was forged, even taken with the allegedly wrongful acts of the defendant, does not support circumstantially or otherwise the essential inference that the defendant knew that the check was forged. "[A] superabundance of evidence on one element of a crime will not suffice to excuse the State's burden of proof as to the other essential elements." *State* v. *Carter,* 138 Vt. 264, 269, 415 A.2d 185, 188 (1980).

The State, having chosen to prosecute on a charge requiring proof beyond a reasonable doubt that the defendant knew the endorsement was forged, rather than offering proof, has left this element a matter of suspicion and conjecture. "In a criminal trial, the State is required to prove beyond a reasonable doubt each element of the alleged offense." *State* v. *Anderkin,* 145 Vt. 240, 243, 487 A.2d 142, 143 (1984) (citations omitted). Therefore, the conviction cannot stand. Our disposition on that issue makes it unnecessary to consider the defendant's other claims of error.

*Conviction reversed and judgment of acquittal entered.*

### ON MOTION FOR REARGUMENT

Appellee State of Vermont moves for reargument pursuant to V.R.A.P. 40. The State claims that the Court misapprehended the law in this matter. We disagree and deny the motion.

The State contends that the Court applied the old test for the use of circumstantial evidence in criminal convictions, since overruled by *State* v. *Derouchie,* 140 Vt. 437, 445, 440 A.2d 146, 150 (1981), which required a different standard of proof. Nowhere in the opinion, however, did the Court hold that proof on the element of knowledge that the check was a forgery had to come under a stricter standard because the evidence on this element was circumstantial.

The State has interpreted the holding in this case to imply that, absent the application of a stricter standard of proof, the guilt of a defendant in a criminal case may not be proved by circumstantial evidence alone. The law is well established that it can, see *State* v. *Colby,* 140 Vt. 638, 641-42, 443 A.2d 456, 457 (1982), and the Court made no such implication. The Court expressly states in the opinion that the element of knowledge that the check was a forgery was not supported by either direct or circumstantial evidence:

> The additional fact established at trial that the check was forged, even taken with the allegedly wrongful acts of the defendant, does not support *circumstantially or otherwise* the essential inference that the defendant knew that the check was forged.

*State* v. *Ravenna,* 151 Vt. 96, 98, 557 A.2d 484, 485 (1988) (emphasis supplied). The Court simply concluded that the evidence

that defendant worked with the person who was the purported endorser of the check, and knew the check was missing, does not support the proposition that defendant knew the check was a forgery.

To support its claim that the Court's holding in this case implies that guilt cannot be established by circumstantial evidence, the State cites that part of the opinion where the Court concluded the evidence in this case lacked any "direct proof" defendant knew that the endorsement for the check was a forgery. The State is confusing "proof" with "evidence." "There is a clear distinction between 'proof' and 'evidence.' The 'proof' is the conclusion drawn from the evidence . . . ." *Jones* v. *Clements,* 41 S.W.2d 1069, 1070 (Tex. Civ. App. 1931); see also *New England Newspaper Publishing Co.* v. *Bonner,* 77 F.2d 915, 916 (1st Cir. 1935); 1 Wigmore on Evidence § 12 (4th ed. 1983). Concluding that the case lacked direct proof is not the same as concluding that it lacked direct evidence. There may be evidence that does not amount to proof, *New England Newspaper Publishing Co.,* 77 F.2d at 916, and that was the conclusion the Court reached in deciding this case.

*For the foregoing reasons, appellee's motion for reargument is denied.*