## Lawrence B. Myott v. Christine K. Myott

[547 A.2d 1336]

No. 86-484

Present: **Peck and Dooley, JJ., and Barney, C.J. ( Ret.), Springer, D.J. (Ret.) and Connarn, D.J. (Ret.), Specially Assigned**

Opinion Filed April 29, 1988

*Carl H. Lisman* and *Michael Marks* of *Lisman & Lisman*, Burlington, for Plaintiff-Appellee.

*Fred I. Parker* and *Susan M. Murray* of *Langrock Sperry Parker & Wool*, Middlebury, for Defendant-Appellant.

**Dooley, J.** This is a divorce action brought by plaintiff, Lawrence Myott, against defendant, Christine Myott, in which plaintiff sought custody of the two minor children of the parties, both boys ages 17 and 11 at the time of the lower court order, along with a share of the property of the parties. Pursuant to an agreement of the parties, temporary custody remained with defendant during the pendency of the action.

The hearing on the merits was relatively brief, consuming approximately three hours. The major witnesses were the plaintiff and the defendant. The defendant had three other brief witnesses — one testified on the value of plaintiff's pension and the other two testified on the interaction between the parties and the children. Much of the testimony related to financial issues. On custody, plaintiff testified that as a result of severe depression, defendant ceased caring for the children and he had become the primary caretaker. He indicated that his relationship with the older son was strained and that custody of this son should remain with defendant. He reiterated his desire for custody of the younger son. Defendant testified, on the other hand, that she was the primary caretaker and plaintiff was rarely home because of his work and his civic activities.

Following the hearing, both parties submitted requests for findings. The defendant's requests were almost entirely on financial issues. They detailed the value of plaintiff's pension but did not request that plaintiff be ordered to withdraw his individual contributions, valued at over $11,700, and provide a share to defendant. Defendant requested one finding on custody of the younger son. In substance, it stated that both parties were competent to have custody but defendant was the primary caretaker and plaintiff was often away from the house at night because of his work. It went on to state it was in the best interest of the child to remain with defendant.

Plaintiff's requests were similar although they placed more emphasis on the custody issue. Neither party's submissions referenced the governing law for deciding custody disputes.

The trial court awarded custody of the younger son to plaintiff, accepting his version of the disputed facts. Specifically, it found that defendant ceased caring for the children because of depres-

sion and that plaintiff had become the primary caretaker. It found that both parents were well educated, in good health and had a close and warm relationship with the child. In reaching its conclusion on custody, it relied upon the provisions of 15 V.S.A. § 652, which had been repealed on July 1, 1986, seventeen days before the hearing on the merits and two months before the trial court's decision. See *Price* v. *Price*, 149 Vt. 118, 541 A.2d 79 (1987) (review of 1986 change in Vermont custody law). The trial court found the value of plaintiff's pension but failed to make an award with respect to it. Following a motion to amend judgment, the pension was awarded to plaintiff free and clear of any claim by defendant.

On appeal, defendant challenges the custody award, arguing that it relied on the wrong custody statute and was based on findings which are clearly erroneous. She also challenges the failure to award her a share of plaintiff's pension. We affirm.

Defendant first attacks the custody conclusion because it relied on 15 V.S.A. § 652, which was repealed on July 1, 1986 and replaced by 15 V.S.A. § 665. The statutes are similar. Both specify how the court is to decide a contested custody matter and both state that the court "shall be guided by the best interests of the child." The repealed statute, however, authorized, but did not require, the court to consider "all relevant factors" bearing on the best interests of the child including four specifically itemized factors. The new statute requires the court to consider at least eight specified factors bearing on the best interests of the child. 15 V.S.A. § 665(b).

The new statute became effective approximately 10 months after the divorce action was filed, but seventeen days before the final hearing. Defendant claims the new statute applied even though it was not in effect at the time of the initiation of the divorce action because it is procedural. Plaintiff, on the other hand, argues that the new statute is substantive and therefore does not apply.

While, in general, new statutes do not apply to cases that are pending at the time of the effective date of the new statute, there is an exception for statutes that are solely procedural or are remedial in nature. See *Murray* v. *Mattison*, 63 Vt. 479, 480, 21 A. 532 (1891); Chaudoir v. Chaudoir, 454 So. 2d 895, 898 (La. App. 1984) (custody statute); 2 Sutherland Stat Const § 41.04, at 349 (4th ed. 1986). The question of the applicability of a statute

in pending litigation is determined largely by 1 V.S.A. §§ 213 and 214(b). Although the parties have viewed the post-July 1, 1986 custody statute as a new law (probably because the codification section number was changed from the former law), it is more appropriate to view it as an amendment of the existing custody statute. The application of an amendment to an existing case is governed by 1 V.S.A. § 214(b)(2), (4). *In re T.L.S.*, 144 Vt. 536, 544-45, 481 A.2d 1037, 1042 (1984). Under this section, the remedial change will apply to the case in progress unless it affects a pre-existing "right, privilege, obligation or liability." 1 V.S.A. § 214(b)(4); *State* v. *Willis*, 145 Vt. 459, 466-67, 494 A.2d 108, 111-12 (1985).

There are no pre-existing vested rights involved here. The court was determining custody prospectively from the time of its order forward. The statute worked no fundamental change in the standards under which custody is considered. It now requires the court to look at factors that were formerly optional and specifies the relevant factors in greater detail. However, the overall standard — the best interests of the child — is the same before and after the statutory amendment. See *Goldberg* v. *Goldberg*, 691 S.W.2d 312, 315 (Mo. App. 1985). Therefore, 15 V.S.A. § 665(b) effective July 1, 1986 applied to this case.

■ The failure to use the new statute is not necessarily fatal to the custody order if the change in the law had no impact on the outcome. In *Harris* v. *Harris*, 149 Vt. 410, 546 A.2d 208 (1988), we adopted the following standard taken from *Rosenfeld* v. *Rosenfeld*, 311 Minn. 76, 83, 249 N.W.2d 168, 171-72 (1976):

> We do not hold that the trial court must make a specific finding on each of the statutory factors, nor do we hold that each factor must be specifically addressed by the trial court. It is sufficient if the findings as a whole reflect that the trial court has taken the statutory factors into consideration, in so far as they are relevant, in reaching its decision.

*Harris*, 149 Vt. at 414, 546 A.2d at 211; see also *Poulin* v. *Upham*, 149 Vt. 24, 26, 538 A.2d 181, 182 (1987) (court must address each of the factors on which evidence has been introduced).

The obligation is similar to that created by the former custody statute. In *Price* v. *Price, supra*, we stated the obligation of the court under 15 V.S.A. § 652 as it existed prior to July 1, 1986 as follows:

For purposes of a contested custody case, we believe that the facts essential to the disposition of the case must include those relating to the court's conclusions and those relating to factors bearing on the best interest of the child raised by the parties. Where, as here, the parties submitted evidence bearing on [three of the statutory factors] . . . as well as other factors, the court was required to make findings and conclusions on these issues.

*Price*, 149 Vt. at 123-24, 541 A.2d at 83.

Under either the older or the newer version of the custody statute, the court cannot go further than the evidence and the positions of the parties take it. As evinced by the request for findings, defendant's position was very simple — defendant is the primary custodian and entitled to custody. When the trial court found to the contrary on the key fact — that is, it found that plaintiff had been the primary custodian — defendant's analysis of the issues led to an award of custody to the plaintiff. See *Harris* v. *Harris*, 149 Vt. at 418, 546 A.2d at 214 (the determination of who is the primary custodian "should be entitled to great weight unless the primary custodian is unfit."). Moreover, the trial court made findings on other factors directly raised by the evidence. While we can, based on hindsight, pick out other factors from the list provided in § 665(b) and say that they are indirectly raised by the evidence, it is unfair to do so where defendant failed to identify the statute she relied on either at trial or in her post-trial request for findings and conclusions and never argued to the court that these factors were significant. Nor do we find them significant in light of the trial court's findings and conclusions. Accordingly, we hold that the use of the repealed statute was a harmless error. See, e.g., *State Highway Board* v. *Pratt*, 127 Vt. 385, 394, 250 A.2d 726, 732 (1969) ("[T]he party who alleges error has the burden of showing that he has been prejudiced thereby. Otherwise it is presumed to be harmless, if it is error at all.") (citations omitted).

Defendant next argues that the court abused its discretion in awarding custody to plaintiff because key findings of fact on which the award was based are clearly erroneous. The parties had very different versions of the circumstances during the years immediately preceding their separation. Plaintiff testified that he was the primary caretaker of the children and did the household

chores such as cooking and cleaning. He testified that defendant became severely depressed as a result of the miscarriage of a child and, as a result, dropped out of all family activities and care of the children. Defendant testified that she cared for the children and did all household chores. She stated that defendant was rarely present in the home during the week, including most evenings, because of his work and his civic activities.

Although the evidence of the parties was irreconcilable, neither party tried directly to refute the other's version of events. The trial court had to believe one party or the other and chose to believe the plaintiff. We cannot set aside the custody award because we would have reached a different conclusion from the facts. *Peckham* v. *Peckham*, 149 Vt. 388, 389, 543 A.2d 267, 268 (1988); *Ohland* v. *Ohland*, 141 Vt. 34, 39, 442 A.2d 1306, 1309 (1982). The trial court has broad discretion in a custody matter, and we must affirm unless the discretion is "erroneously exercised, or was exercised upon unfounded considerations or to an extent clearly unreasonable in light of the evidence." *Jensen* v. *Jensen*, 141 Vt. 580, 581-82, 450 A.2d 1155, 1156 (1982). The findings here are not clearly erroneous, and the exercise of discretion is not clearly unreasonable in light of the evidence. Accordingly, there is no error.

Defendant's last claim relates to the failure of the trial court to award her a share of the plaintiff's vested pension benefits. It is undisputed that plaintiff's vested interest was valued at $11,716 at the time of the hearing. Initially, the trial court failed to make any award with respect to the pension benefits. Citing the applicable statute, 15 V.S.A. § 751(b), and noting that the division need be equitable, the court divided the rest of the assets of the parties. The major asset, a house worth $47,000 net, was divided between the parties. Most personal property went to the party in possession with defendant receiving her $500 savings account.

Following a motion to amend judgment, the trial court added as a conclusion that the pension was awarded to plaintiff free and clear of any interest of the defendant. Assuming all other personal property had been equally divided, this left the division of the house, pension and savings account at 59% for plaintiff and 41% for defendant.

The situation here is comparable to that present in *Victor* v. *Victor*, 142 Vt. 126, 453 A.2d 1115 (1982). In *Victor*, the appellant argued that the trial court improperly treated his pension as a

marital asset and distributed a share of it to his spouse. This Court did not reach the question of whether a pension is a marital asset for distribution under 15 V.S.A. § 751 because it found that the lower court had not distributed the pension as a marital asset but instead had "treated it as one factor among many in arriving at a just and equitable distribution of property . . . ." *Victor*, 142 Vt. at 129, 453 A.2d at 1116. Here, the trial court considered the pension to be a marital asset, but the challenge is from the opposing spouse who wanted such treatment but further argues that treatment should lead to benefits for her. As in *Victor*, we can accept the trial court's treatment of pension benefits for purposes of analysis without ruling on its validity.

The trial court has broad discretion in dividing property. See *Philburt* v. *Philburt*, 148 Vt. 394, 533 A.2d 1181 (1987). The distribution must be equitable, not necessarily equal. See *Kingsbury* v. *Kingsbury*, 147 Vt. 625, 523 A.2d 1246 (1987). The split here is not so unequal that it shows an abuse of discretion. See *Sutton* v. *Sutton*, 147 Vt. 639, 523 A.2d 1249 (1987). Many of the statutory factors — including those relating to the custody award and the need of the plaintiff to establish a new home for the younger child — support the division. Accordingly, we can find no abuse of discretion.

*Affirmed.*